# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| KEVIN FERNANDEZ<br><br>Plaintiff,<br><br>v.<br><br>JAMES GREG COX, *et al.,*<br><br>Defendants. | 3:14-cv-00578-MMD-VPC<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court are plaintiff's motions for sanctions against defendant Carissa Tucker (ECF No. 193) and for default judgment against defendant Michael Brown (ECF No. 210). Having reviewed the filings and the record, the court recommends that the motion for sanctions be granted and the motion for default judgment be denied without prejudice.

## I. FACTUAL AND PROCEDURAL HISTORY

Kevin Fernandez ("plaintiff"), proceeding *pro se*, is an inmate in the custody of the New Hampshire Department of Corrections. However, during the period giving rise to this action, he was in the custody of the Nevada Department of Corrections ("NDOC") and housed at Ely State Prison ("ESP") in Ely, Nevada. Plaintiff filed an application to proceed *in forma pauperis* (ECF No. 1) and a civil rights complaint (ECF No. 5) on November 12, 2014. Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint on January 2, 2015, allowing Counts I through X to proceed against the following ESP and NDOC defendants: Renee Baker, Arthur Boynton, Michael Brown, Corey Cooke, James Greg Cox, Michael Crossman, Marina Crounck, Seth Davis, Scott Evers, Charles Fillman, Michael Fletcher, Tyler Hathaway, Leslie Healer, Danny

1  Holland, Bert Jackson, Steven Kimbrell, Dr. Koen, Thomas Lamb, Brent LeBeau, E.K.
2  McDaniels, Javier Ornelas, Janeatte Ornelas, Taylor Paryga, Glenn Perkins, Christopher Roberts,
3  Christian Rowley, Tom Talbert, Duane Thompson, Carissa Tucker, and Summer Westbay. (ECF
4  No. 4 at 15–17.)  The court stayed proceedings to permit the parties to engage in settlement
5  proceedings, but the stay was lifted on April 2, 2016 when no settlement was reached. (*Id.* at 17.)

6  On April 6, 2015, the Court directed the Office of the Attorney General to provide notice
7  of the defendants for whom it could accept service, and to file under seal the last known addresses
8  of the defendants for whom it could not accept service. (ECF No. 11 at 2.) That notice was filed
9  on April 27, 2015. (ECF No. 12.) Therein, Senior Deputy Attorney General ("DAG") Frederick
10 Perdomo accepted service on behalf of defendant Tucker, among others, as she was an NDOC
11 employee and submitted a request for representation. (*Id.* at 1–2.) Service was not accepted on
12 behalf of defendant Brown, who was no longer employed by NDOC. (ECF No. 25 at 2.) The
13 represented defendants answered the complaint on June 5, 2015. (ECF No. 33).

14 On July 9, 2015, plaintiff served his first set of interrogatories. (*See* ECF No. 193 at 1.)
15 DAG Perdomo was unable to obtain responses from Tucker or to reach her by phone. (ECF No.
16 119 at 2.) On August 18, 2015, he was informed that she had left the employ of the NDOC. (*Id.*)
17 Thereafter, Perdomo sent a certified letter to the address provided in Tucker's request for
18 representation, advising her that he would withdraw from the representation should she fail to
19 respond. (*Id.* at 3.) Tucker apparently signed for the letter on September 8, 2015, but did not
20 contact Perdomo. (*Id.*) He sent a second certified letter on September 22, 2015, notifying Tucker
21 of his intent to withdraw. (*Id.*) The letter was signed for on October 1, 2015, but as before,
22 Tucker did not respond. (*Id.*) The Court granted Perdomo's motion to withdraw on November
23 18, 2015, and on January 29, 2016 ordered that Tucker's last known address be unsealed and sent
24 to plaintiff. (ECF Nos. 136, 168.)

25 When plaintiff received no response to the interrogatories he moved for default sanctions
26 against Tucker. (ECF No. 169.) Initially, the court denied the motion for failure to serve;
27 however, on April 6, 2016, the court granted plaintiff's motion for reconsideration and ordered
28

the Clerk to send Tucker copies of plaintiff's original and second motions for sanctions. (*See* ECF Nos. 172, 175, 181, 199.) Tucker was allowed until April 29, 2016 to respond, and advised that a failure to do so would constitute consent to the granting of the motion. (ECF No. 199.) Tucker did not file an opposition.

As for defendant Brown, service of the complaint was effected on January 2, 2016. (ECF No. 163.) A reply was due within twenty-one days. (*Id.*) Because Brown failed to answer or otherwise raise a defense, plaintiff moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a) on March 31, 2016. (ECF No. 194.) The Clerk entered the default on April 1, 2016, and on April 14, 2016 plaintiff filed a motion for default judgment under Rule 55(b). (ECF Nos. 195, 210.)

## II.     DISCUSSION

**A.     Legal Standards**

### 1.     Federal Rule of Civil Procedure 37(d)

Under Rule 37(d) of the Federal Rules of Civil Procedure, the court "may, on motion, order sanctions if . . . a party, after being properly served with interrogatories under Rule 33 . . . , fails to serve its answers, objections, or written response." Fed. R. Civ. P. 37(d)(1)(A). "A motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." Fed. R. Civ. P. 37(d)(1)(B). The court may issue any of the sanctions listed in Rule 37(b)(2)(A), including issuing default judgment against nonresponsive party. Fed. R. Civ. P. 37(d)(3).

"A terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). "Only 'willfulness, bad faith, and fault' justify terminating sanctions." *Id.* (quoting *Jorgenson v. Cassiday,* 320 F.3d 906, 912 (9th Cir.2003)). Once willfulness, bad faith, or fault has been found, courts within the Ninth Circuit consider five factors to determine whether terminating sanctions are warranted: "(1) the public's interest in

expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id.* (internal quotation omitted). The test is not applied mechanically, however. It is there to guide the court's analysis, rather than to serve as "a set of conditions precedent for sanctions or a script that the district court must follow." *Id.* at 1095. In weighing the risk of prejudice and less drastic sanctions, "[w]hat is most critical . . . is whether the discovery violations 'threaten to interfere with the rightful decision of the case.'" *Id.* at 1097 (quoting *Valley Eng'rs v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998)).

### 2. Federal Rule of Civil Procedure 55

Obtaining a default judgment under Rule 55 of the Federal Rules of Civil Procedure is a two-step process. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, once default has been entered, the party must seek default judgment under Rule 55(b). Where "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk . . . must enter judgment for that amount and costs . . . ." Fed. R. Civ. P. 55(b)(1). In all other cases, however, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). If necessary to effectuate the judgment, the court may "conduct hearings or make referrals . . . to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (C) investigate any other matter." *Id.* In short, the entry of default does not automatically entitle the plaintiff to default judgment. Rather, the court's decision "is a discretionary one," *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980), and its "starting point is the general rule that default judgments are ordinarily disfavored," *Eitel*, 782 F.2d at 1472.

A reviewing court is to consider the following factors in determining whether to enter default judgment: "(1) the possibility prejudice to the plaintiff; (2) the merits of plaintiff's

substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1471–72.  In applying the *Eitel* factors, the complaint's well-pleaded factual allegations regarding liability are taken as true, but allegations of damages must be proven by the plaintiff.  *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987); *O'Brien v. United States*, No. 2:07-cv-00986-GMN-GWF, 2010 WL 3636171, at *2 (D. Nev. Sept. 9, 2010).  Further, any "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

### 3. Default Judgments in Multi-Defendant Actions

In cases with multiple defendants or multiple claims, Federal Rule of Civil Procedure 54(b) provides that "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."  The Rule applies to all final judgments, including default judgments.  In addition, the Supreme Court has long recognized that a court should not grant default judgment against one or more defendants while the case proceeds against others who are jointly liable.  *Frow v. De La Vega*, 82 U.S. 552, 554 (1872).  "It follows that if an action against the answering defendants is decided in their favor, then the action should be dismissed against both answering and defaulting defendants." *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001) (discussing *Frow*, 82 U.S. 552).  The *Frow* rule has been extended beyond situations of joint liability to defendants who are similarly situated, such that they would share similar defenses.  *See, e.g.*, *id.* at 531–32; *Clingman v. Somy*, No. 2:10-CV-1834 JCM (LRL), 2011 WL 383951, at *6 (D. Nev. Feb. 3, 2011).  "Where *Frow* applies, it would be an abuse of discretion to enter a default judgment against some but not all defendants prior to adjudication of the claims against answering defendants.  Under these circumstances, there is, as a matter of law, 'just reason for delay' of

entry of judgment under Rule 54(b)." *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1008 (N.D. Cal. 2001) (citations omitted).

**B.     Application**

### 1.     Motion for Default Sanctions against Defendant Tucker

Plaintiff requests that this court exercise its authority under Rule 37(d) to grant default judgment against Tucker for her failure to respond to interrogatories. (ECF No. 193 at 1.) In the alternative, he asks the court to compel Tucker to respond and to impose lesser sanctions. (*Id.*) Tucker's silence during discovery is undisputed, as is her failure to participate in this litigation since leaving NDOC, despite the multiple notices sent to her by DAG Perdomo and by plaintiff. Therefore, the court finds that Tucker acted willfully, and turns to whether a sanction of default judgment is appropriate under the five-part test. *See Hyde & Drath v. Baker*, 24 F.3d 1162, 1167 (9th Cir. 1994) ("Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault.").

As in most cases where termination sanctions are considered, the first two factors cut in favor of granting plaintiff's motion. *See Wanderer v. Johnston,* 910 F.2d 652, 656 (9th Cir. 1990). "Orderly and expeditious resolution of disputes is of great importance to the rule of law. By the same token, delay in reaching the merits, whether by way of settlement or adjudication, is costly in money, memory, manageability, and confidence in the process." *In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006). This case was initiated on November 11, 2014, nearly two years ago. The discovery period was extended on multiple occasions at the request of the parties, with the final cutoff being April 19, 2016. (*See* ECF No. 243.) Tucker's failure to respond to interrogatories is in part to blame for the delays (*see* ECF No. 193 at 2; ECF No. 119), and is contrary to the public's interest in the speedy resolution of litigation. Similarly, Tucker has frustrated the court's ability to manage its docket by failing to respond to orders and contributing to the protracted nature of this litigation.

The third factor looks at the risk of prejudice to plaintiff. Limited delays that do not interfere with a plaintiff's claim are not enough, *Wanderer*, 910 F.2d at 656, but where a

1  defendant's actions impair the "ability to proceed to trial or . . . interfere with the rightful decision
2  of the case," they are prejudicial, *see Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002).
3  "The law also presumes prejudice from unreasonable delay." *PPA*, 460 F.3d at 1227.  Here,
4  Tucker's ongoing refusal to participate in this action has impaired plaintiff's ability to discover
5  facts relevant to proving his claims and proceeding to trial.  Accordingly, this factor also weighs
6  in favor of sanctions.

7  Public policy favors disposition of cases on their merits, and "strongly counsels" against
8  terminating sanctions.  *Id.* at 1228.  However, courts have given this fourth factor little weight
9  were the non-moving party has completely refused to respond to discovery, as Tucker as done
10 here.  *See, e.g.*, *id.*; *In re Exxon Valdez*, 102 F.3d 429, 433 (9th Cir. 1996); *Panliant Fin. Corp. v.*
11 *Isee3d, Inc.*, No. 2:12-CV-01376-RFB, 2015 WL 5176586, at *3 (D. Nev. Sept. 4, 2015).  Thus,
12 the court does not find this factor to be dispositive.

13 Turning to the final factor, the court considers whether lesser sanctions are available and
14 have been tried, and whether it has "warned the recalcitrant party about the possibility of case-
15 dispositive sanctions."  *Conn. Gen. Life Ins. Co.*, 482 F.3d at 1096.  As an alternative to
16 terminating sanctions, plaintiff's motion suggests that the court issue an order compelling Tucker
17 to respond to the interrogatories.  (ECF No. 193 at 1.)  However, given Tucker's year-long
18 silence, the court finds no reason to believe that such an invitation would be persuasive.  The
19 court expressly warned Tucker that a failure to oppose plaintiff's motions would be interpreted as
20 her consent to default judgment.  (ECF No. 199.)  As a consequence, the fifth factor weighs in
21 favor of termination sanctions.

22 Having found that four of the five *Eitel* factors support termination sanctions, the court
23 hereby recommends that plaintiff's motion for sanctions be granted and default be entered against
24 Tucker.  *See Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011) (approving dismissal
25 "'where at least four factors support dismissal, or where at least three factors strongly support
26 dismissal'" (quoting *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)).  Importantly,
27 however, the court's decision does not mean that entry of a final judgment is appropriate at this
28

1  time. Damages have not been established, and nearly thirty defendants continue to actively
2  litigate this case. Many of those defendants are current or former ESP correctional officers who,
3  like defendant Tucker, are alleged to have given plaintiff psychotropic medication against his will
4  or knowledge. (*See* ECF No. 4 at 6–9.) At a minimum, Tucker and the active defendants appear
5  to be similarly situated for purposes of defending against plaintiff's claims, and there is a
6  significant risk of inconsistent judgments if the court were to enter default judgment against
7  Tucker at this juncture. Therefore, there is ample reason for delay under Rule 54(b) and *Frow*.
8  Plaintiff is invited to move for default judgment if his claims against the non-defaulting
9  defendants are resolved in his favor.

10  **2.    Motion for Default Judgment against Defendant Brown**

11  Next, the court addresses plaintiff's motion for default judgment against defendant Brown,
12  who has failed to answer or raise a defense to the complaint. Plaintiff requests judgment in the
13  amounts identified in his complaint: compensatory damages of $1,800.00 per day for 155 days
14  plus $500,000 in punitive damages, for a total of $779,000.[1] (ECF No. 210 at 2 (citing ECF No.
15  5 at 69–70).) Plaintiff argues that the *Eitel* factors, in balance, show default judgment is
16  warranted. (ECF No. 210 at 3–6.)

17  Plaintiff's motion is denied for two reasons. First, despite plaintiff's statement to the
18  contrary (*see* ECF No. 210 at 2), the claim is not for a "sum certain." Plaintiff has not included
19  with his motion any sort of accounting or other evidence to demonstrate how he arrived at the
20  amounts requested, particularly with respect to the costs of his physical, mental, and emotional
21  injuries. While it is within the court's power to hold an evidentiary hearing to determine the

---

[1] Plaintiff reached the total of $1,800.00 by calculating $100.00 per day for violations of his rights under the First, Eighth, and Fourteenth Amendments of the U.S. Constitution; $100.00 per day for violations of his rights under the Nevada Constitution and state statutes; $100.00 per day for injuries to his reputation and humiliation; $500.00 per day for mental and emotional injuries; and $1,000.00 per day for physical injuries. (ECF No. 5 at 69–70.) It is not clear whether plaintiff seeks $1,800.00 per day from each defendant individually or as a group. (*See id.*)

The complaint also seeks treble damages "in an amount triple of that awarded for compensatory damages; and nominal damages "in an amount to reflect justice and equity in this matter," but those are not mentioned in the motion for default judgment. (*Id.* at 70)

amount of damages, Fed. R. Civ. P. 55(b), such a hearing would in this case be premature. Second, and more importantly, numerous similarly-situated defendants continue to actively litigate this matter, as was discussed above. To enter default judgment against Brown at this time would invite the sort of incongruous outcomes proscribed by *Frow*, 82 U.S. at 554. Accordingly, the court recommends that plaintiff's motion for default judgment be denied without prejudice.

### III.   CONCLUSION

Consistent with the above, the court concludes that there is good cause to issue termination sanctions against Tucker under Rule 37(d). Plaintiff's motion for sanctions should be granted, and default entered against Tucker. Entry of default judgment remains premature, however, in light of the similarly-situated defendants who remain active in this case. With that in mind, the court also recommends that plaintiff's motion for default judgment against Brown be denied, without prejudice to refiling. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for sanctions (ECF No. 193) be **GRANTED** and **DEFAULT ENTERED** against defendant Tucker.

**IT IS FURTHER RECOMMENDED** that plaintiff's motion for default judgment against defendant Brown (ECF No. 210) be **DENIED WITHOUT PREJUDICE.**

**DATED**: September 2, 2016.

_____
**UNITED STATES MAGISTRATE JUDGE**