UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KEVIN FERNANDEZ,<br><br>    Plaintiff,<br><br>v.<br><br>JAMES GREG COX, *et al.*,<br><br>    Defendants. | 3:14-cv-00578-MMD-VPC<br><br>**AMENDED[1] REPORT AND<br>RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants motion for summary judgment (ECF Nos. 342, 344 (sealed)). Plaintiff opposed (ECF No. 359), and defendants replied (ECF No. 368). For the reasons stated below, the court recommends that defendants' motion for summary judgment (ECF Nos. 342, 344 (sealed)) be granted in part, and denied in part, as determined below.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Kevin Fernandez ("plaintiff") brings this civil rights action pursuant to 42 U.S.C § 1983 for events that occurred while his was incarcerated at Ely State Prison ("ESP") in Ely, Nevada. On November 12, 2014, plaintiff filed his complaint asserting numerous counts against Nevada Department of Corrections ("NDOC") and ESP officials. (ECF No. 1-1.) The District Court screened the complaint and allowed ten counts to proceed. (*See* ECF No. 4.)

Plaintiff's claims all stem from one core allegation: that specific ESP correctional officers repeatedly tainted plaintiff's food with psychotropic medications from February 19, 2014 to July 23, 2014. (*See id.* at 12–26.) He alleges generally that he brought this food tampering to the

---

[1] The original Report and Recommendation, (ECF No. 383), contained a clerical error recommending that the clerk enter judgment and close the case. Plaintiff filed a motion for the court to correct the clerical error. (ECF No. 385), which the court now grants. FED. R. CIV. P. 60(a) (the court may correct clerical errors upon motion). This Amended Report and Recommendation removes the recommendation that the clerk enter judgment and close the case in order to reflect the court's "contemporaneous intent" that plaintiff's case proceed to trial. *Metso Minerals, Inc. v. Powerscreen Int. Distribution Ltd.*, 297 F.R.D. 213 (E.D.N.Y. 2014).

attention of ESP medical staff, who failed to properly examine him, and subsequently to ESP supervisors, who failed to terminate the food drugging. (*Id.* at 43–50.)

The alleged events giving rise to plaintiff's claim are as follows. Plaintiff claims that starting on February 19, 2014, head caseworker Michael Fletcher ("Fletcher") and ESP psychologist Bert Jackson ("Jackson") conspired with plaintiff's unit officers to have them place psychotropic medications in plaintiff's food in retaliation for the numerous grievances filed against them and for the purpose of causing plaintiff injury. (*Id.* at 36–38.) Jackson provided the psychotropic medications to the officers. (*Id.* at 36.) The unit officers directly involved in the conspiracy to drug plaintiff's food include defendants Arthur Boynton ("Boynton"), Brent LeBeau ("LaBeau"), Marina Crounck ("Crounk"), Corey Cooke ("Cooke"), Michael Crossman ("Crossman"), Seth Davis ("Davis"), Scott Evers ("Evers"), Charles Fillman ("Fillman"), Tyler Hathaway ("Hathaway"), Leslie Healer ("Healer"), Danny Holland ("Holland"), Steven Kimbrell ("Kimbrell"), Thomas Lamb ("Lamb"), Javier Ornelas, Jeanette Ornelas, Taylor Paryga ("Paryga"), Glenn Perkins ("Perkins"), Christian Rowley ("Rowley"), Tom Talbert ("Talbert"), Duane Thompson ("Thompson"), Carissa Tucker ("Tucker"), Summer Westbay ("Westbay"), Michael Brown ("Brown"), and Christopher Roberts ("Roberts"). (*Id.* 36–40.)

Plaintiff became aware that officers were drugging his food after several officers made suspicious statements to him. On March 4, 2014, plaintiff told LeBeau about his symptoms, and LeBeau admitted to plaintiff that the officers had been putting psychotropic medications into plaintiff's food before serving it to him. (*Id.* at 14.) After LeBeau had told plaintiff about the food tampering, plaintiff tried to seek immediate medical attention but was denied. (*Id.*) On March 26, 2014, Ornelas commented to plaintiff, "how did [you] like your breakfast, are you feeling dizzy?" (*Id.* at 16.) Plaintiff confronted Javier Ornelas about LaBeau's admission, but Ornelas laughed and replied, "prove it, that's why LeBeau isn't here anymore," and that LeBeau was "a weak link alright." (*Id.*) On March 30, 2014, plaintiff told Hathaway and Thompson to "slow down, I'm still dizzy from the pizza you served me last night." (*Id.* at 16–17.) Hathaway replied, "I thought you'd like that." (*Id.* at 17.) Plaintiff said, "I know you're putting shit into my food." (*Id.*) Hathaway

stated, "prove it." (*Id.*) Plaintiff began experiencing symptoms from food he purchased, which he attributes to Hathaway and Thompson because they were the only officers to have access to his cell. (*Id.*) Finally, Kimbrell served plaintiff his food and stated, "enjoy your meal" and then laughed and had a mischievous grin on his face. (*Id.* at 23–24.)

On May 19, 2014, plaintiff filed a grievance and complained about the food drugging. (*Id.* at 38.) Fletcher took plaintiff into a room with four officers and asked if plaintiff had a problem with any of the officers drugging his food. (*Id.*) Later, Healer asked plaintiff about his grievance and asked if plaintiff had a problem with Kimbrell while Kimbrell was standing behind plaintiff. (*Id.* at 39.) In both instances, plaintiff felt intimidated and did not complain further. (*Id.*) Again, on June 4, 2014, Healer asked plaintiff if he had a problem with Kimbrell; Kimbrell, Fletcher and Jackson stood behind plaintiff. (*Id.* at 40.) Plaintiff eventually told them that Kimbrell was drugging his food. (*Id.*) After each grievance, the officers drugged plaintiff's food at higher doses. (*Id.* at 39–40.)

On July 1, 2014, Inspector General Cameron Horselly ("Horselly") picked up multiple food items and preserved them as evidence; plaintiff claims that these food items contained certain psychotropic medications. (*Id.* at 25.) According to defendants, the food items were never tested because they appeared sealed and there was insufficient medical evidence to initiate an investigation. (ECF No. 342 at 10.) Defendants cannot locate these food items. (Def. Exh. D at 2.)

On February 26, 2014, plaintiff sought medical attention for the food-drugging symptoms. (ECF No. 1-1 at 43.) Despite plaintiff's insistence that correctional officers were drugging his food, Dr. Michael Koehn ("Dr. Koehn") repeatedly failed to perform blood, urine, or toxicology tests. (*Id.* at 43–46.) On May 23, 2014, after plaintiff wrote a grievance, plaintiff's urine was collected and tested for the presence of psychotropic medications. (*Id.*) Plaintiff claims that the test revealed the presence of psychotropic medications, but that Dr. Koehn told plaintiff there was nothing he could do. (*Id.* at 20, 4546.) Plaintiff continued experiencing extreme symptoms and pleaded for medical attention but was largely ignored by medical staff. (*Id.* at 45–46.) Plaintiff wrote kites and

3

letters to ESP Warden Renee Baker ("Baker") and NDOC Director James Cox ("Cox"). (*Id.* at 48.) He complained about his food being drugged by prison officials and asked for help. (*Id.* at 48.) On July 1, 2014, plaintiff met with NDOC Deputy Director of Operations E.K. McDaniels ("McDaniels") via video conference and discussed the food drugging. (*Id.* at 50.). None of the supervisors terminated the food drugging. (*Id.*)

Based on these facts, plaintiff alleges violations of his Fourteenth Amendment due process right in Count I and II, and a violation of his Eighth Amendment right in Count III. (*Id.* at 12, 25.) In Count IV, plaintiff alleges that defendant correctional officers intimidated him not to report that his food was being drugged by increasing the dosage of the psychotropic medications in his food, in violation of his First Amendment rights. (*Id.* at 36–42.) In Count V, plaintiff alleges an Eighth Amendment deliberate indifference to medical needs claim against Dr. Koehn. (*Id.* at 43.) In Count VI, plaintiff alleges violations of his First, Eighth, and Fourteenth Amendment rights for the food drugging based on a theory of supervisory liability. (*Id.* at 47–50.) Plaintiff also alleges that the food drugging and resulting failure to treat plaintiff constitute state law claim of negligence in Count VII, intentional infliction of emotional distress in Count VIII, and violation of Nevada Revised Statute 41.7003 in Count VIII. (*Id.* at 51–63.) Finally, plaintiff alleges in Count X, under a theory of respondeat superior, that Cox, McDaniels, and Baker are liable for the state law claims based on the actions of their employees, the correctional officers who drugged plaintiff's food. (*Id.* at 64–65.)

On July 20, 2017, defendants moved for summary judgment on the following grounds: 1) there is no evidence that defendants were personally involved in the alleged food tampering; 2) there is no evidence that psychotropic medications were actually placed in his food; and 3) the court lacks subject matter jurisdiction over plaintiff's state law official capacity claims. (ECF No. 342 at 2–3.) Additionally, defendants ask the court to find that plaintiff has violated § 1915(g) of the Prisoner Litigation Reform Act ("PLRA") for filing three claims that were frivolous, malicious, or failed to state a claim upon which relief may be granted. (*Id.* at 3–4.) Plaintiff opposed defendants' motion for summary judgment and defendants replied. The recommended disposition follows.

## II. LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III. DISCUSSION

**A.  Civil Rights Claims Under section 1983**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or

official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

**B.  Analysis**

    **1.  Personal Involvement**

Defendants claim that plaintiff cannot establish defendants' personal involvement in tampering with plaintiff's food because he has not alleged that he witnessed anyone placing medications in his food and he has not alleged that any of his food show signs of tampering. (ECF No. 342 at 12–13.) Without the ability to prove defendants' personal involvement in allegedly drugging plaintiff's food, defendants argue that all of plaintiff's claims must fail for lack of causation. (*Id.*) Plaintiff contends in his verified complaint, in his motion, and in his attached declaration that defendant LeBeau directly told plaintiff that correctional officers "were drugging his food," and that other officers made statements implying their participation in a conspiracy to drug plaintiff's food. (See ECF No. 4 at 16–17, 25; ECF No. 359 at 12–13; Plaintiff's Exh. 1 at 4.) Additionally, plaintiff provides a detailed account of every meal that caused him to feel ill and the defendant officers who prepared and served those meals. (Plaintiff's Exh. 2.) Plaintiff claims that a reasonable jury could conclude from this direct and circumstantial evidence that defendants were personally involved in drugging his food.

Section 1983 suits cannot be brought on a theory of vicarious liability, so a plaintiff must plead that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Starr v. Baca*, 652 F.3d 1202, 1206–07 (9th Cir. 2011) (discussing *Iqbal* and explaining that "when a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinates."). When filing a suit under section 1983, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under [section] 1983 must be based on the personal involvement of the

7

defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Likewise, state law claims involving negligence, intentional infliction of emotional distress, and a violation of NRS 41.700 require some level of personal culpable conduct, and plaintiff's respondeat superior claim is derivative of an employee's personal culpable conduct. *See Rockwell v. Sun Harbor Budget Suites*, 112 Nev. 1217, 1225 (1996).

      Here, plaintiff has provided sufficient evidence for a rational jury to conclude that defendants were personally involved in tampering with plaintiff's food. Plaintiff may defeat a motion for summary judgment based upon allegations made in his verified complaint and declaration to the extent that it sets forth facts "based on personal knowledge" and "admissible in evidence." *Keenan v. Hall*, 83 F.3d 1083, 1090 n. 1 (9th Cir. 1996). Plaintiff relies on his assertions within his verified complaint, as well his declaration attached to his response to defendants' motion for summary judgment. (ECF No. 359, 359-1). He asserts under penalty of perjury that LeBeau admitted to him that defendant officers were drugging plaintiff's food with psychotropic medications, and that he overheard Fletcher and Jackson direct Fillman to continue drugging plaintiff's food. (Plaintiff's Exh. 1 at 4, 14.) Additionally, he alleges that Javier Ornelas, Hathaway, Thompson, Crossman made statements that imply their involvement in drugging plaintiff's food. (ECF No. 359 at 16–17, 23–24; Plaintiff's Exh. 1 At 10.) Plaintiff's testimony as to defendants' admissions are not conclusory allegations that the court is permitted to ignore; whether defendants actually admitted to tampering with plaintiff's food are questions of material fact. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). Furthermore, plaintiff has personal knowledge of defendants statements because he claims that defendants made these admissions directly to him, or that he personally overheard such statements. Finally, plaintiff's assertions regarding defendants' statements are not hearsay and are admissible under Federal Rule of Evidence 801(d)(2) as admissions by party opponents. FED. R. EVID. 801(d)(2). The court must consider plaintiff's allegations in determining whether he has met his burden of providing evidence that raises a genuine issue of material fact. *See Jones*, 393 F.3d at 923.

Because plaintiff's testimony regarding defendants' statements is not hearsay, they may be offered for their truth — that defendants personally drugged plaintiffs food or were aware that plaintiff's food was being drugged but did nothing to stop it. *See* FED R. EVID. 801(d)(2). Furthermore, plaintiff's meticulous records identify the defendant officers who served plaintiff the meals that caused him adverse symptoms. (Plaintiff's Exh. 2.) Should a jury find plaintiff's account credible, then the court would be permitted to infer that plaintiff's food was in fact being drugged, and that the named defendant officers were personally involved in drugging plaintiff's food. It is not for the court to decide whether defendants' evidence of plaintiff's mental health would prevent a jury from finding plaintiff non-credible; issues of credibility are reserved entirely for the jury. *Wall v. County of Orange*, 364 F.3d 1107, 1110 (9th Cir. 2004). Defendants' contest admitting to tampering with plaintiff's food, but plaintiff has raised a dispute of the material fact of defendants' involvement that the jury must decide. Summary judgment on this basis is improper.

### 2. Contamination of Plaintiff's Food

Additionally, defendants contend that plaintiff is unable to establish that his food was contaminated with psychotropic medications. (ECF No. 342 at 13–16.) Defendants point out that plaintiff does not allege that he witnessed any of the defendants place psychotropic medications in his food or that he observed any indications from his food that it had been adulterated with psychotropic medications. (*Id.* at 15.) In defendants' view, plaintiff's only evidence that his food was drugged is that he experienced symptoms after eating certain meals, but there is no medical evidence relating plaintiff's alleged symptoms to his ingestion of psychotropic medications. (*Id.* 13–15.)

Plaintiff counters by claiming that he need not provide medical evidence of ingesting psychotropic medications to survive summary judgment. (ECF No. 359 at 16.) Even so, he contends that the medical evidence indicates that he was suffering from ten different medical conditions, and that these conditions are consistent with the side effects from the ingestion of psychotropic medications. (*Id.*) He alleges that the ESP medical staff observed plaintiff experiencing dizziness, tremors, nausea and shortness of breath, and that he experienced other

symptoms not addressed by ESP staff, all of which are consistent with the side effects of the ingestion of psychotropic medications. (ECF No. 359 at 16–17.) He claims that the failure of ESP medical staff to identify psychotropic medications in his food as the cause of his condition only goes to the staff's incompetence or deliberate indifference. (ECF No. 359 at 17.)

Plaintiff has raised a triable issue of fact as to whether defendants' tampered with his food. The medical evidence defendants provide certainly militates against a finding that plaintiff was exposed to psychotropic medications, but the court cannot, as a matter of law, find for defendants at the summary judgment stage solely because their medical evidence is persuasive. *See Santos v. Gates*, 287 F.3d 846, 852 (9th Cir. 2002). As discussed above, plaintiff raises a triable issue of fact regarding whether defendants placed psychotropic medications in plaintiff's food or failed to prevent such tampering, based on defendants' admissions that plaintiff avers he heard. This genuine dispute necessarily includes a genuine dispute as to whether the food was drugged, as would be the case if a jury believes plaintiff's account of defendants' admissions and infers that those admissions are also true. No medical evidence is required in light of plaintiff's testimony. *See Thomas v. Wilber*, No. 1:10-cv-00006, 2014 U.S. Dist. LEXIS 32285, at *45 (E.D. Cal. Mar. 12, 2014) (medical evidence not required to prove that food was adulterated when plaintiff testifies that he observed signs of tampering from which a jury could infer his food was adulterated).

Defendants medical evidence that plaintiff exhibited symptoms inconsistently and only when he believed he was under surveillance fails to preclude a jury from finding that plaintiff was exhibiting symptoms consistent with ingestion of psychotropic medications. (ECF No. 352 at 15.) Plaintiff rejects the medical opinions that he feigned his symptoms and provides the results of a lie detector test to support the sincerity of his beliefs. (Plaintiff's Exh. 1 at 16–17; Plaintiff's Exh. 25.) Moreover, the fact that ESP medical staff did not draw a connection between plaintiff's symptoms and the ingestion of psychotropic medications does not necessarily entail that no connection existed. Plaintiff attaches medical sources to his motion that raise a genuine dispute as to whether his symptoms were consistent with the ingestion of psychotropic medications. (ECF No. 359 at 20.) Finally, defendants' evidence that a test of plaintiff's urine returned negative results does not

foreclose plaintiff from establishing that his food contained psychotropic medications because, as Dr. Koehn notes, "a negative drug screen result proves nothing beyond the absence of the seven drugs [tested for] in your urine on the day of the test." (Plaintiff's Exh. 11; *see* Plaintiff's Exh. 10 (extensive list of most commonly prescribed psychotropic medications)). It is the jury's function to determine credibility, weigh the admissible evidence provided by both parties, and find the facts to apply to plaintiff's legal claims. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (court may not make credibility determinations or weigh conflicting evidence at summary judgment). Despite defendants' persuasive evidence, they have not negated the possibility that plaintiff can prove that his defendants' adulterated plaintiff's food with psychotropic medications. Because defendants do not raise any further challenges to plaintiff's ability to factually establish his claims, the court recommends that summary judgment be denied. FED. R. CIV. P. 56(c).

### C.  State Law Claims

Defendants contend that the court lacks subject matter jurisdiction over plaintiff's state law claims under Nevada Revised Statute ("N.R.S.") 41.0337 because plaintiff failed to name, and properly serve, the State of Nevada. (ECF No. 342 at 17; ECF No. 375 at 10.) Plaintiff claims that defendants' waived any objection to insufficient service of process, that his individual capacity claims against defendants did not require him to name the state of Nevada as a defendant, and finally, that the court should allow plaintiff to amend his complaint to name the state of Nevada as a defendant. (ECF No. 359 at 23–24.)

The Nevada State Legislature enacted 41.031 "to waive the immunity of governmental units and agencies from liability for injuries caused by their negligent conduct, thus putting them on equal footing with private tort-feasors." *Turner v. Staggs*, 89 Nev. 230 (1973); N.R.S. 41.031 (2017). To effect this waiver, a plaintiff must meet certain requirements set forth in N.R.S. Chapter 41; under Nevada Revised Statute 41.0337, a plaintiff's failure to name the State of Nevada or the particular department, commission, board or other agency of the State whose actions are the basis for the suit deprives the court of subject-matter jurisdiction. Nev. Rev. Stat. 41.0337(1); *Jimenez v. State*, 98 Nev. 204, 205 (1982). However, N.R.S. 41.0377 applies only to "tort action[s] arising

1  out of an act or omission within the scope of a person's public duties or employment." N.R.S.
2  41.0337(1).

3        Plaintiff is correct that defendants waived objections to insufficient service of process by
4  failing to raise an objection prior to filing their answer on June 5, 2015. (ECF No. 33); *see* FED. R.
5  CIV. P. 12(b), (h)(1)(B).  However, defendants do not object to service of process, but rather are
6  objecting to the court's jurisdiction over plaintiff's state law claims in light of plaintiff's failure to
7  effect a waiver of sovereign immunity. *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (sovereign
8  immunity is jurisdictional).  Sovereign immunity may be raised "at a late stage" in litigation, so
9  long as the state has not unequivocally consented to suit. *Wisconsin Dep't of Corr. v. Schacht*, 524
10 U.S. 381, 393–399 (1998) (Kennedy, J., concurring) (noting that sovereign immunity has been
11 treated as a "hybrid" of subject matter jurisdiction and personal jurisdiction doctrines); *see*
12 *Edelman*, 415 U.S. at 673.

13       Next, plaintiff argues that N.R.S. 41.0337 does not apply to his state law claims because
14 these claims are brought against defendant unit officers for actions that are outside the scope of
15 their public duties. (ECF No. 359 at 24.)  Defendants do not address this argument, but contend
16 that plaintiff's state law claims should be dismissed to the extent they are brought against
17 defendants in their official capacity. (ECF No. 375 at 10.)  Although N.R.S. 41.031 and the
18 provisions it references make no distinction between official capacity and personal capacity claims,
19 section 1983 jurisprudence is instructive.  Official capacity suits filed against state officials are
20 merely an alternative way of pleading an action against the state entity of which the defendant is
21 an officer. *Hafer v. Melo*, 502 U.S. 21, 27 (1991).  Individual capacity claims on the other hand
22 seek to hold officials personally liable for their unconstitutional actions taken under color of state
23 law. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  Here, plaintiff is barred from bringing his
24 state law claims against defendants in their 'official capacity' because such a suit seeks to hold the
25 State of Nevada, or NDOC, liable for the state law violations of its employees.  He cannot maintain
26 state law claims against the state because he failed to meet the requirements of N.R.S. 41.0337 for
27 waiving sovereign immunity.  The court will not now allow plaintiff to amend his complaint to
28

effect a waiver of sovereign immunity. Over three years have elapsed since plaintiff commenced his action and allowing plaintiff to add a party at this stage would unfairly prejudice defendants.

However, plaintiff may proceed on his state law claims to the extent he seeks to hold defendants personally liable. Whether defendants' act of drugging plaintiff's food is "outside the scope of their public duties" is a factual inquiry for the jury that is material to whether NRS 41.033 applies to bar his remaining state law claims. *Evans v. Southwest Gas Corp.*, 108 Nev. 1002, 842 P.2d 719, 721 (1992), *overruled on other grounds by GES, Inc. v. Corbitt*, 117 Nev. 265, 21 P.3d 11 (2001) (whether employee acted within the scope of his employment is generally a question of fact). The court recommends that defendants' motion for summary judgment be granted as to plaintiff's state law claims to the extent that they seek to hold the State of Nevada or NDOC liable. Summary judgment is improper to the extent that plaintiff's state law claims seek to hold defendants personally liable because plaintiff has raised a genuine dispute of material fact.

### D.    PLRA

Finding that plaintiff has met his burden to raise genuine disputes of material facts for trial, the court is unable to find that plaintiff's claims are frivolous and in violation of Section 1915(g) of the PLRA. 28 U.S.C. 1915(g) (prisoner may not proceed *in forma pauperis* if he has had three or more actions or appeals dismissed for frivolity, maliciousness, or failure to state a claim upon which relief could be granted).

### IV.    CONCLUSION

For good cause appearing and for the reasons stated above, the court recommends that defendants' motion for summary judgment be granted as to plaintiff's state law claims brought against defendants in their official capacity because plaintiff failed to effect a waiver of the State of Nevada's sovereign immunity. Because plaintiff has succeeded in raising a genuine dispute of material fact as to whether defendants adulterated his food with psychotropic medications, the court further recommends that defendant's for summary judgment be denied as to all remaining claims.

The parties are advised:

    1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

    2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (ECF No. 342) be **GRANTED** as to plaintiff's state law claims against defendants in their official capacity.

**IT IS FURTHER RECOMMENDED** that defendants' motion for summary judgment (ECF No. 342) be **DENIED** as to plaintiff's remaining claims.

DATED: January 8, 2018

_/s/ Valerie P. Cooke_
**UNITED STATES MAGISTRATE JUDGE**